IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DELORES L. SOMERVILLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:12CV1360 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, DISTRICT JUDGE.

Plaintiff Delores L. Somerville ("Ms. Somerville") commenced this action on December 21, 2012 to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Social Security disability benefits. (Doc. 2.) Before the Court are the parties' cross motions for Judgment on the Pleadings. (Docs. 10, 13.) The Court heard oral arguments on the parties' motions on March 17, 2015. For the reasons set forth below, the Court denies Ms. Somerville's Motion and grants the Commissioner's Motion. The decision of the Commissioner is affirmed.

**I. Procedural History**

On June 7, 2010, Ms. Somerville filed an application for disability insurance benefits and on July 1, 2010 filed an application for supplemental security benefits. (Tr. at 195, 202.[1])

---

[1] The transcript citations refer to the certified administrative record.

In both applications, Ms. Somerville alleged a disability beginning on May 25, 2010. (*Id.*) Following a denial initially and upon reconsideration by the Social Security Administration ("SSA"), on September 27, 2010, Ms. Somerville requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 114, 126-27, 145.) The hearing occurred on September 20, 2011, and in a decision dated December 22, 2011, the ALJ denied Ms. Somerville's disability application. (*Id.* at 10, 20.) On January 10, 2012, Ms. Somerville requested that the Appeals Council review the ALJ's decision (*id.* at 5-6), and on October 25, 2012, her request was denied (*id.* at 1), making the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review

This Court's review of the Commissioner's denial of benefits is authorized under 42 U.S.C. § 405(g). *Hancock v. Astrue,* 667 F.3d 470, 471 (4th Cir. 2012). The scope of review, however, is extremely limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The role of the reviewing court is not to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)(second alteration in original). Rather, the court must uphold the Commissioner's factual findings if they are supported by substantial evidence and are free of legal error. *Hancock*, 667 F.3d at 471. Substantial evidence is such "evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). It is considered more than "a scintilla of evidence" but is less "than a preponderance." *Id.* "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].'" *Id.* (quoting *Johnson,* 434 F.3d at 653 (alteration in original)).

### III. SSA Five Step Process and the Decision of the ALJ

In evaluating disability claims, the Commissioner uses a five-step process. *Hancock*, 667 F.3d at 472. In sequence, the Commissioner asks "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* The claimant bears the burden of production and proof in steps one through four; the burden shifts to the Commissioner in step five "to produce evidence that other jobs exist in the national economy that the claimant can perform considering [his or her] age, education, and work experience." *Id.* at 472-73. Before going from step three to step four, the Commissioner assesses the claimant's "residual functional capacity" ("RFC"), a determination of what work the claimant is capable of doing. The RFC is used at step four and at step five when the claim is evaluated at those steps. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). If the ALJ finds that the claimant has failed to satisfy any step of the process, the ALJ need not proceed to the next step. *Id.*

Here, the ALJ found that Ms. Somerville had not engaged in substantial activity since the onset date through the date she was last insured (step one); had the following severe impairments: sciatica due to degenerative disc disease of the lumbar and cervical spine; hypertension; sinus problems; left shoulder degenerative joint disease; obesity; and carpal tunnel syndrome of the left wrist (step two); and that Ms. Somerville's impairments, alone or in combination, did not meet or equal a listed impairment (step three). (Tr. at 12-13.) The ALJ then determined that Ms. Somerville had the RFC to perform light work, except with the

following conditions: occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and/or crawling; no climbing of ladders, ropes or scaffolds; frequent pushing/pulling with both upper extremities; no more than occasional overhead reaching with both upper extremities; no more than frequent use of the left, non-dominant upper extremity for fingering, handling, and operation of hand controls; avoid concentrated exposure to hazards and pulmonary irritants as well as temperature extremes; and she requires the ability to change position between sitting and standing every 30-45 minutes. (*Id.* at 13-14.)

The ALJ concluded that Ms. Somerville was unable to perform any past relevant work (step four), but considering her age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that she was able to perform (step five). (*Id.* at 18.) These included sales attendant in retail trade, clerical office helper, and clerical mail clerk. (Tr. at 19.) Because the ALJ found that Ms. Somerville had the RFC to perform the foregoing jobs, he found her not disabled. (*Id.* at 19-20.)

## IV. Discussion

### a. The ALJ's Assessment of the Opinion Evidence is Supported by Substantial Evidence.

Ms. Somerville first takes issue with the ALJ's evaluation of the medical opinions in formulating the RFC. Specifically, Ms. Somerville asserts that the ALJ erred in not giving the opinion of her treating physician, Dr. Bishop, controlling weight.

It is well established that a treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c) 416.927(c). However, if the treating physician's opinion is not supported by the

4

medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, then it is not entitled to controlling weight. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

In this case, the ALJ provided three reasons for giving little weight to Dr. Bishop's opinion. (Tr. at 15-18.) First, the ALJ determined that the objective medical evidence did not support the degree of limitations Dr. Bishop assigned. (*Id.* at 15-16.) The record shows that on July 8, 2008, before the alleged onset date, radiographs demonstrated mild degenerative changes to Ms. Somerville's lumbar spine.[2] (*Id.* at 15, 300, 368.) On August 2, 2010, which is after the alleged date of onset, Dr. Surmonte performed a consultative examination of Ms. Somerville. (*Id.* at 17, 377.) Dr. Surmonte noted that Ms. Somerville walked normally, but slowly, and had fair range of motion in her neck with some tenderness in the central portion of her cervical spine. (*Id.* at 17, 378-79.) Dr. Surmonte further noted that Ms. Somerville had full range of motion in her hands, had limited range of motion in her shoulders with tenderness in her left shoulder, and had adequate grip strength. (*Id.*) Although Dr. Surmonte concluded that Ms. Somerville's impairments could interfere with her abilities to, among others, move about, carry, lift, and handle objects, x-rays done on this same day revealed very mild degenerative changes of her cervical spine and early degenerative changes of her left shoulder.[3] (*Id.* at 373-74.) On August 28, 2008, testing revealed a moderate lesion of the right ulnar nerve at the elbow and a mild lesion of the left median nerve at the wrist. (*Id.* at 330.) In November

---

[2]  Ms. Somerville points the Court to the July 28, 2008 results of electrodiagnostic testing, which revealed a lesion at the L5 nerve root in the right leg. (Tr. at 319.)
[3]  These results are taken from the "Impression" portion of the radiology reports. Ms. Somerville points to the "Findings" section in the left shoulder report, which noted "moderate degenerative changes." (Tr. at 374.)

5

of 2010, an electrodiagnostic evaluation showed no findings of lumbar radiculopathy or myopathy. (*Id.* at 424.) Similarly, the findings of a December 23, 2010 MRI of Ms. Somerville's lumbar spine demonstrated normal alignment of the vertebral bodies, and the impression was that her lumbar spine was normal.[4] (*Id.* at 416.) Although MRI results of Ms. Somerville's pelvis showed sclerosis within the right ilium, the results also showed no acute abnormalities. (*Id.* at 419.) On March 2, 2011, examinations from Ms. Somerville's visit to UNC Hospitals revealed mild tenderness to palpation of her lumbar spine and full range of motion of her extremities. (*Id.* at 412.) The ALJ's determination that these mild, objective findings justified giving little weight to Dr. Bishop's opinion is supported by the record. [5] *See Hawkins v. Colvin*, No. 4:13-CV-15, 2014 WL 119259, at *15 (E.D.Va. Jan. 13, 2014) (holding that "the records reflecting mild to moderate objective clinical findings" do not support a finding of disability); *see also Mastro*, 270 F.3d at 178.

Second, the ALJ determined that Dr. Bishop's conservative treatment of Ms. Somerville's impairments failed to support the degree of limitations she assessed. In making this determination, the ALJ cited the injections and medication Dr. Bishop provided to Ms. Somerville as treatment for her impairments. (*Id.* at 16, 427-28, 434-35, 441, 452, 456.) The ALJ also noted that Ms. Somerville's treatment included a hand splint, physical therapy, and

---

[4] On December 20, 2010, Dr. Kumar noted that Ms. Somerville has significant back pain of "uncertain etiology." (Tr. at 421.) Ms. Somerville states that Dr. Kumar did not review the earlier record showing that she had a L5 nerve lesion.

[5] Ms. Somerville points out evidence that may be favorable to her. *See* supra notes 2-4. She also argues that the non-examining state doctors' opinions were inconsistent with the findings of Dr. Bishop and Dr. Surmonte and, therefore, should not have been accorded great weight. However, it is the ALJ's responsibility, not this Court, "to reconcile inconsistencies in the medical evidence." *Jones v. Colvin*, No. 1:14–CV–00167–FDW, 2015 WL 574540, at *1 (W.D.N.C. Feb. 11, 2015)(quoting *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976)).

chiropractor treatment. (*Id.* at 14.) As in the mild objective findings, the ALJ's decision to assign little weight to Dr. Bishop's opinion due to the conservative nature of Ms. Somerville's treatment is supported by the record. *See Bright v. Colvin*, No. 4:13–CV–226–FL, 2014 WL 5871348, at *10 (E.D.N.C. Nov. 12, 2014)(finding no error in giving the physician's opinion little weight in part because plaintiff's treatment did not include surgery but was limited to medication and occasional steroid injections); *Hoke v. Colvin*, No. 2:13–CV–00044–MOC, 2014 WL 4829001, at *5 (W.D.N.C. Sept. 29, 2014)(citing physical therapy and chiropractor treatment as a conservative course of treatment); *Lucas v. Astrue*, No. 5:12–CV–131–FL, 2012 WL 6917052, at *5-6 (E.D.N.C. Dec. 28, 2012)(finding treatment notes and prescribed course of treatment failed to support physician's disability opinion), *recommendation adopted*, 2013 WL 239195, at *1 (E.D.N.C. Jan. 22, 2013); *Burger v. Commissioner of Social Sec.*, No. 12–CV–11763, 2013 WL 2285375, at *6 (E.D.Mich. May 23, 2013)(finding that plaintiff's conservative course of treatment, which included wrist splints, cortisone injections, and physical therapy supported the ALJ's credibility determination).

The final reason the ALJ gave for assigning little weight to Dr. Bishop's opinion was that Ms. Somerville's daily activities were inconsistent with Dr. Bishop's limitations. (Tr. at 14, 16.) Ms. Somerville testified that she did laundry, cleaned and cooked with assistance, and drove limited distances. (*Id.* at 56-57, 59-61.) She also testified that she attended church, went to the grocery store, and regularly visited her mother. (*Id.* at 60-61.) Although the Court concurs with Ms. Somerville that her ability to perform these activities, alone, is not a basis for assigning little weight to Dr. Bishop's opinion, when coupled with evidence that she was

7

exercising (*id.* at 434, 439, 454, 469),[6] the weight the ALJ accorded to Dr. Bishop's opinion is supported by substantial evidence. *See Weeks v. Astrue*, No. 2:11-CV-15–MR–DSC, 2012 WL 2704258, at *5 (W.D.N.C. Mar. 27, 2012)(concluding that the objective findings and plaintiff's ability to exercise supported ALJ's decision not to give treating physician's opinion controlling weight), *recommendation adopted*, 2012 WL 2704255, *1 (W.D.N.C. July 6, 2012).

      **b.    The ALJ's Credibility Determination is Supported by Substantial Evidence.**

Ms. Somerville also challenges the ALJ's credibility analysis, contending that it is not supported by substantial evidence. In particular, Ms. Somerville claims that the ALJ erred in concluding she lacked credibility based on the mild medical findings and her activities of daily living.

The Fourth Circuit outlined a two-part test for evaluating issues of credibility involving a claimant's statements about pain, fatigue, and other symptoms. *Craig v. Chater*, 76 F.3d 585, 589, 594-95 (4th Cir. 1996); *see also* 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig*, 76 F.3d at 594 (quoting 20 C.F.R. §§ 404.1529(b), 416.929(b)). If the first step is satisfied, as it was in this case (Tr. at 14), then step two requires the ALJ to evaluate the intensity and persistence of pain and the extent to

---

[6] While the ALJ did not cite Ms. Somerville's exercise as part of her activities of daily living, the ALJ does not have to discuss every piece of evidence. *Czerska v. Colvin*, No. TMD 12–2238, 2013 WL 5335406, at *4 (D.Md. Sept. 20, 2013)

8

which it affects a claimant's ability to work. *Craig*, 76 F.3d at 594. The ALJ must consider "'all the available evidence' . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it[.]" *Id.* at 595 (internal citations omitted); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *Craig*, 67 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3.

Here, the ALJ explicitly stated his reasons for his credibility determination: "The claimant's allegations are not fully credible given the conservative nature of her treatment, relatively mild objective findings, and continued activities of daily living . . . ." (Tr. at 14.) Although this Court may have reached a different result on Ms. Somerville's credibility, the Court cannot substitute its judgment for that of the ALJ. *Johnson*, 434 F.3d at 653. It is the ALJ that has the opportunity to observe the claimant to assess her credibility. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). Thus, the ALJ's credibility determination "should be accepted by the reviewing court absent 'exceptional circumstances.'" *Meadows v. Astrue*, No. 5:11-CV-00063, 2012 WL 3542536, at *9 (W.D.Va. Aug. 15, 2012)(quoting *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1010 (4th Cir. 1997)). Because there is substantial evidence to support the ALJ's credibility determination, which is entitled to great deference, remand is not warranted.

For the reasons outlined above, the Court enters the following:

### Order

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**; Ms. Somerville's Motion for Judgment on the Pleadings (Doc. 10) is **DENIED**; the Commissioner's Motion for Judgment on the Pleadings (Doc. 13) is **GRANTED**; and this action is **DISMISSED** with prejudice. A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 19th day of March, 2015.

                                                   /s/ Loretta C. Biggs
                                                  United States District Judge